Only four argued cases this morning, and counsel ready to proceed with the first? Is there a Keeson or a Kessin? Kessin. Kessin. Please proceed. You're reserving three, right? Correct. Yeah. Thank you, Your Honors. Good morning. May it please the Court. I'm Jay Kessin for the Appellant Investment. The key aspect of the invention at issue here is that it allows a user to model multiple investments in a portfolio while analyzing these investments under different market conditions. And by doing so, by sampling these investments at the same time, you maintain the temporal correlation. In this case, the Board committed multiple legal errors, all of which flow from its failure to housekeeping questions. Where in the record do you offer the Board claim constructions for the terms bias parameter and resampling process? Sure, Your Honors. For bias parameter, support in the record below can be found on pages 1245 to 1247 and from pages 1372 to 1375. For resampling, there are a number of places where our definition is supported, but the best ones are at 1256, 1266, 1297, and 1384. So that's with respect to both bias parameter and resampling. Does that answer your question, Your Honor? Well, I don't know. You say there's support for them. You offered a definition there. Correct. Okay, correct. I'll look at it. Correct, Your Honor. Can I ask you a question about the bias parameter? And I'm probably going to be inarticulate or incorrect even in the formulation of the question, so I'm going to hope that you'll help me. On the bias parameter, your key textual point, as I understand it, is that the bias parameter has to be in the picking of samples from a preselected pool, and that's not done in SORTINO. The board, as I understand it, pointed to, again as I understand it, without really distinguishing two different things that might be a bias parameter or might be in combination a bias parameter. One is the splitting of the overall sample space into seven scenarios, and then after each scenario has been randomly sampled and a particular statistical measure has been created for each one of those, some sort of weighting of the results. Now, I understand again textually why you might say that that's not a bias parameter in the selection of the sample. Now, here's my question. Can you explain to me in a way I might understand why, as a mathematical matter, using a bias parameter in the selection of the samples from the already defined sample space is in any way different from weighting the measures that you derive from a random resampling process within each scenario? The difference, Your Honor, and Your Honor is exactly correct in characterizing the arguments. The key issue is that if you were to bootstrap and then you were to combine them, then you lose the temporal correlation between investments. So what the Varma patent teaches is it allows you to sample multiple investments, let's say on the same day, and how they relate with respect to each other. Sortino bootstraps each investment in each scenario. And when you bootstrap it, you've lost the link between this investment and this other investment, how they relate to each other on, for example, the same day. So you can think of it this way. It's sort of like, if you imagine you had a bunch of ping-pong balls in a lottery basket, if you were to pull a ping-pong ball for one day, and that had all the values of your investments on that day, then you wouldn't lose the temporal correlation. So you would know that on this day, this investment is up and this investment is down, and then on a similar down day you may have a different relation, but you've kept track of it. If you just sample one scenario, then you lose it. Does that answer your question? Part of what I'm not sure about is whether that answers my question or not, I'm afraid. Doesn't your answer assume that Sortino is only analyzing one investment at a time? That is actually, he explicitly— But your answer to just now, as I understood it to Judge Toronto, was assuming that that was true. But then what happens if you're wrong on that? What happens if we think that Sortino does teach, because it's looking at the S&P 500 and there's a composite of things in the 500, the rationale that was expressed at least in one of the two opinions by the same judge using different rationale. What happens if—what's your answer to Judge Toronto? First, Your Honor, we don't have to surmise, because Sortino in footnote 4 explicitly says that— for a given investment. There is no way to keep track of multiple investments. If you just bootstrap one scenario— But I guess what Judge Clevenger quite helpfully clarified my question. My question was, forget about Sortino. If you do, say, two investments and you're doing resampling on each one, what mathematically is the difference between the random resampling followed by some sort of linear combination of the second moment or the third moment or the fourth moment or something, and biasing the sample selection in the process of choosing your samples? So, Your Honor, if you were to, say, sample one investment, and you bootstrap that investment, you're picking out more samples. But what you're not doing is you're not keeping track of the temporal relation with respect to the other investment. You're doing each of them separately. So you might end up a different number of up days and down days, and you might end up a different number of up days and down days, and they're two separate buckets, and you haven't kept track of what happens on the same day. When one goes up, what happens? It may go up or go down. Another day, when the market is down, it may behave differently. So the temporal correlation becomes important. That's why you keep the temporal correlation, and then you bootstrap. You don't bootstrap separately. What happens if there's a disagreement of opinion? It seems to me that the $64,000 question in both of these cases is, what does Sortino teach with regard to one or two, and what does Sortino teach with regard to a biasing parameter? What a reference teaches is a question of fact, right? So we're sitting here trying to decide what Sortino is telling us, and we're having a disagreement between rational people who have some skill in the art and understanding what these references teach. So if substantial evidence is the test, which it is, then why isn't there substantial evidence to support your adversary's point of view in terms of his view of what Sortino teaches? First, Your Honor, even before we get to the issue of comparing Sortino to the claims, even with respect to, say, bias parameter, the claim, as amended, clearly says, and this is a matter of law, the claim says you set a degree of randomness by the user. It says in. It has to do in. In sample selection, in a resampling process. Does that mean in connection with, in relation to? Does the word in mean in, in, like there is water in this vessel? Or does it mean in, meaning in, in relation to, in connection with? The word has to be defined, right? And if you look at basically- And if you have two differing interpretations that one suggests one interpretation, one suggests the other. If in means in relation to, then you have to sit down on this issue. Your Honor, all that we're saying is that it just simply means what the patent teaches us. The patent tells us that in-sample selection means that you set the bias parameter when you pick the samples. And that's what we call- He's not picking samples. He's picking different months, right? Or it could be 50%- He's making some random selections up front in terms of the months and the years he's picking. Actually, what Sortino does- Why isn't that biasing? Because it certainly affects the outcome. Right. Answer me. Why isn't that biasing? Right. I will, Your Honor. Sortino talks, does not talk about any bias with respect to the seven market conditions. What he says is the seven market conditions are exclusive and exhaustive. And that's what he describes. He says these are seven- I'm not talking about the seven market conditions. I'm talking about the months you pick. Oh. When you, when you- I'm sorry, Your Honor. You have to listen carefully because, I mean, what we're- what I'm trying to get at is whether or not a reasonable person, a rational person from a substantial evidence point of view can look at Sortino and say, yeah, I see their biasing in there. And the biasing is in connection with selecting the samples and in connection with applying the process. Right. And, Your Honor, with respect to the 12 months, there is no biasing. He picks a scenario and he samples the investment in that scenario. There is no teaching- Just to see if we're on the same page. I thought your point about the scenario selection is that's the definition of the sample space, which the claim expressly distinguishes from in the selection of the sample, not in the definition of the sample space. Correct. Is that- Correct, Your Honor. Correct, Your Honor. Absolutely. But then it takes the results of the random sampling within each of seven different sample spaces and it does some weighting. Correct. And I'm trying to understand why that doesn't amount to biasing in the selection of the sample. Right. And it simply doesn't because when you do it the way the 291 patent does it, you can pick a down day or you can pick an up day and then you look at all the values of the investment that you have in your portfolio and you keep them together. You don't bootstrap them separately. When you bootstrap them separately, you've lost critical information. You've lost information about how these two investments relate to each other. That's the critical insight and that is what the 291 patent teaches as maintaining temporal correlations to perform a better analysis, more accurate analysis. So that way you don't underestimate risk and overestimate return because this temporal relation, understanding how they relate to each other, is the key. And that's why Fino doesn't care about that. What are the best declarations or factual materials or evidence in the record to try to get at what we've just been talking about about why the scenario plus weighting doesn't amount to bias parameter that affects the degree of randomness in the selection of samples. So let me give you three examples. Your yellow light's on just so you know. Let me give you three quick examples, Your Honor. It's Dr. Savage who has a declaration starting on page 571. Particularly on page 591, he discusses this ping pong example that I just gave. Then you have the testimony of Dr. Herzog, also at page 310 and 311. And finally, you have Dr. Sortino himself. Dr. Sortino himself testified that the 291 system is completely different. Those are his exact words on page 291 of the record. So Dr. Sortino himself said that. So those are three examples, Your Honor. Good morning, Your Honors, and may it please the Court. I do want to address some of these issues with Sortino and hopefully clarify for the Court the teaching of the reference, where the substantial evidence is that supports the Board's findings. But I first want to address the waiver. Because if this Court determines that the patent owner waived the claim construction issues, then we never reach the Sortino issues. Because the entire basis for patentability, the entire argument we're making now as to why the claims are patentable, relies upon these narrow claim constructions of the term resampling, of the term bias parameter, of the two or more investments limitation. I'm not sure what you mean by narrow. Let's take the bias parameter. I took it that their point was, I guess, what I tried to describe as my understanding of the point. That what's in Sortino produces certain weightings, creates different sample spaces, but what it absolutely does not do is bias the selection of samples from a particular sample space you've already created. And that's different. Did they not make that argument to the Board? They made that argument to the Board. Let me explain to you, Your Honor, why the Board made the correct decision, why there's substantial evidence to support the Board's decision that that is, in fact, disclosed in Sortino. So let me start with what's disclosed in the 291 patent. Unembodiment is disclosed in the 291 patent. If they made that argument, they preserved the right to make that argument here. But not the claim construction, not the narrow definition that they're urging for the bias parameter, not the language they're trying to read into the bias parameter, which is in the initial selection of samples. What about the explication that Judge Toronto just stated in having buried in it a claim construction? Well... A.K.A. I mean, why does he have to say A.K.A.? He said, this is my view of what's, you know... Because the argument that was presented to the Board was a distinguishing argument over the prior art, all right? What they're arguing to you now is the Board erred by construing the claim, or failing to construe the claim in a particular way. By not reading into the claim language or the construction of the bias parameter, that it's an initial selection of samples from the sample space. That initial selection and that from the sample space, you won't find those words in the arguments that were made to the Board. What I got out of the portion of the record to which your opposing counsel cited me, what I got initially was that they argued against your position, but not that they argued for a position. I think you're correct about that, Your Honor, that they referred in a parenthetical to an argument that we had made that the resampling process is broader than just the sampling of individual monthly samples, and so they cite to this court an argument that we had made that they had criticized below. I believe you're correct about that. Let me explain Sortino versus the 291 patent. An embodiment in the 291 patent says, let's pick a sample space, whatever the investment may be, S&P 500, Nikkei Index, figures 15 through 17 have a number of different investments identified there. Pick the sample space. From within that sample space, let's use a bias parameter to affect the randomness of the resampling we're going to do. One way we can do that, set our bias parameter to one. In that case, we're only going to draw up days from that investment, just the days that were up. Or we can set our bias parameter to zero, in which case we're only going to select down days. Then we run our bootstrapping, we run our resampling on just the up days or just the down days, and in that way, we have biased our sample, we've affected the randomness in the resampling. We've biased our sampling. And we have ended up with an analysis of bull and bear market conditions. That's what's discussed in the 291. Sortino. S&P 500 is an example of an asset that Sortino looked at. Just one of nine, nine different assets. But he talks about 28 years of the S&P 500. We have that data. There's our sample space. From within that sample space, we can identify individual scenarios, seven different scenarios. This is what I'm stuck on. It seems to me he's got seven sample spaces. That's what resampling would do. Each one he's created, and we're going to do separate siloed resampling, and we're going to get an expected value and a kurtosis or something, whatever. And then we're going to take those numbers, and we're going to create a linear combination of 20% of this and 30% of that and 2% of that and get a number that comes out of that. I think the confusion, Your Honor, is you're going to a next step. That's an additional disclosure, an additional embodiment that Sortino talks about, the weighting scenario. Do you think that the board relied on the weighting as part of its reasons? I do not. I think the board relied upon breaking down the sample space, the 28 years of the S&P 500. What was the language at A7, I think it's actually A7 of both appendices, in which the board said the examiner said that the bias parameter doesn't have to be applied all at one time. It can include stuff after the sampling. Now, the scenario definition is whatever else it is, it's not after the sampling. It's before the sampling. We would agree with that, right? So how did the board not rely on the weighting? Again, the sample space is selected, the S&P 500 sample space is selected first. Why are there not seven sample spaces? They could be considered additional sample spaces, but what they also are are just like the up days and down days in the 291 patent. Just dividing that sample space up into bias parameter set to zero or bias parameter set to one, we've got individual samples then which we run the resampling on. That happens after in the 291? But the one and the zero and the minus one, as you've described it, and I gather from the spec, has to do with what samples, what you're drawing in the 4,000 iterations of sampling from each of the scenarios in its own silo. That's not what dividing the scenario, dividing the S&P results into seven scenarios is. It is, because we're dividing that S&P 500 sample into individual scenarios, individual monthly samples that correspond to that scenario. The months when we were in a deep recession, the months when we were in a real growth period, the months when we were in a mild recession period. It's breaking down that sample space into those individual scenarios and then running the resampling on those scenarios. What is the best evidence, declarations I assume it would be, that says, I'm a statistician, I view the creation of these seven scenarios, not as the definition of seven sample spaces, but as the process of sampling. Because that distinction is actually in the claim between sample space and the selection of samples. What evidence says the selection of samples includes the definition of the scenarios? Just one clarification before I give you the record, only claim one. Only claim one specifically calls out selecting a sample space, and then later on talks about the bias parameter in sample space. Not claim 11, not claim 29, doesn't even include the bias parameter. But I will cite you two of the declarations that the requester submitted to the office, and I'll cite you to Dr. Bloomfield's declaration, and that's at 657-58 of the record, and also Dr. Glasser, and that is at 703-04 of the record. And both of those declarations explain why a person of ordinary skill in the art would have understood SORTINO to be describing the individual scenarios, bootstrapping those individual scenarios to correspond to what's disclosed in the 291. How do they say that a person of skill in the art would have understood the definition of the scenarios as biasing in the selection of samples with reference to that language? Counsel, don't shake your head up and down and sideways. They do not address the in-sample selection, that specific language of the claim, Your Honor, because that was not added until after they had submitted their declarations. So we don't really have evidence about how a person of ordinary skill in the art would apply the language that is now at issue to this, what feels to me, quite crucial question of interpreting SORTINO. But the addition of the in-sample selection, it's a broad limitation. As Judge Clevenger was pointing out, that doesn't say only when you are selecting individual monthly samples or individual daily samples. It's not written that narrowly. It just says a biased parameter that determines the degree of randomness in-sample selection in a resampling process. That's what happens in SORTINO. That depends on what meaning you read into the word in. I don't know what's the correct interpretation of the word in in that claim. We have to rely upon the broadest reasonable interpretation in the reexamination, and we submit that the broadest reasonable interpretation of in-sample selection in a resampling process was met by SORTINO. Breaking down those individual SORTINO... It just means in general connection with at any point in time in the process. That sounds consistent to the broadest reasonable interpretation. That's what you're hanging your hat on, right? Yes. Can you refresh my recollection of the prosecution history that led to the introduction of that language into the claims? The in-sample selection? Yes. It was added during the reexamination. During the reexamination. Was there a rejection that said what? Because that might be informative about what that term means. Rejection based upon SORTINO as the primary reference. SORTINO being the reference that broke up the individual scenarios, broke individual economic scenarios, and the patent owner made the argument to the office that we've added in-sample... Because they're making that amendment in order to get away from SORTINO, right? That is the argument they made to the patent office, and the examiner correctly rejected it, as did the board, because that broad language, in-sample selection, did not distinguish SORTINO. Did not distinguish SORTINO. Well, why doesn't that point in the direction of saying that SORTINO means something very specific, because if N has a general meaning, then SORTINO would read on the claim. And they're trying to avoid having SORTINO on the claim. That's why they went from one investment to two, because they thought if we go to one investment instead of two, we'll get away from SORTINO. Well, they only added... The argument is made in the companion case by the patent office that you can't take the file history of a re-exam into consideration in claim construction. For some reason, that's a no-no. Is that right? I'm not recalling the specific argument that the office may have made in the other... I'm just following up on what I understood Judge Toronto's point to be. I would think that part of this court's consideration of construction issues, had they been raised, and again, our point is that these claim construction issues were not raised, but the court would be able to consider the entire record, including the record before the office. I think to the extent the patent office is trying to make a disclaimer argument based on what's happening live during the re-examination process, to the extent they're trying to read additional limitations into the claim, saying, look, we amended the claim to add in-sample selection, and we argued to the patent office that this is why it distinguished over Sortino... If they had written in their file history, well, we were looking at Sortino, and Sortino has a bias parameter, but the bias parameter is sort of not very specifically identified where it's happening. We're going to tell you exactly where ours is to distinguish over Sortino. And Sortino teaches one investment, and we're going to do two, because that will make us different. Then it would be clear disclaimer, wouldn't it? Perhaps, Your Honor, although here they only added two or more investments again to one of the claims. But the file history has to have some pertinent short of disclaiming. We look at file history all the time to help us understand the meaning of claims. True, but I would think there's a difference between a patent owner or an applicant in original prosecution making an amendment, making an argument, having that argument be interpreted later on after the patent was set, after the patent had issued, and trying to understand the meaning of an amendment that was made. Here, the process is still ongoing. They made this amendment in the reexamination, and they're saying to you, we added in-sample selection to this claim, for example, on the bias parameter. And we also argued to the patent office all these other things. We now want you, and guess what? The board made a mistake because they didn't construe the claim to include all of our arguments. They want you to change the claim construction, adopt a new claim construction they never offered to the board, and read in all these limitations from the specification, limitations not supported by the claims, limitations that are inconsistent with the claims. They want you to read all that into the claims now. The cases we cited in our red brief, if they wanted those limitations in the claims, they should have amended them in the reexamination when they had the opportunity. Do you have anything you want to quickly say about the board's reasoning on the argument that whatever else Sortino shows, it does not show analyzing two or more investments in response to a single request? And our position, Your Honor, is that Sortino does disclose multiple investments, including the S&P 500 as one of the nine different asset categories that they studied. We think there was substantial evidence to support it. Where does Sortino disclose, even arguably, analyzing two or more investments in response to a single request? It's not even clear. In fact, I guess I will just say it seems to me the board did not find that it did. The board relied on comprising to say one request, two requests, you can have as many requests as you want. I think that's an accurate summary of what the board did, Your Honor. That can't be what comprising does here. No, but the claim limitation reads a statistical analysis request corresponding to or pertaining to the two or more investments. So it's not just the comprising language, it's the open-ended A. A, under the court's case law, is generally understood to be open-ended. It doesn't necessarily mean one and only one, as the patent owner here is arguing. And really what that argument becomes, Your Honor, the A statistical analysis request that has to correspond to two investments, that necessarily requires the simultaneous analysis. That's really what they're getting at. In fact, my friend for the patent owner stood up this morning and he started explaining the invention as talking about temporal correlation and simultaneous analysis. None of those limitations are in the claim. None of those limitations are in the claim. The board correctly found, and there's substantial evidence to support the board, that serial requests satisfied the claim. Thank you, Your Honor. I'll just point out that one of the other points that the patent owner had made that the board and the examiner had failed to appropriately consider the expert testimony, and I just want to point the court to our red brief, pages 48 through 49, and 58 through 62, where we walk through in detail where the board and the examiner actually did consider that evidence carefully, comprehensively, and completely. This is a case that the board got right, the examiner got right. We're asking the court to affirm and fall. Thank you. Counsel, the reason I interrupted your opposing counsel was because you were shaking your head in denial when he was saying things, and that's not right. I'm sorry, Your Honor. Just responding to that. Go ahead. I'm sorry, Your Honor. Can you address, I'm sorry, put aside bias parameter, the two or more investments, put aside comprising, what about the indefinite Article A by itself? Yes. A, Your Honor, based on prior jurisprudence from this court, could mean one or more than one based on the context in which it's used. Here you have claim, for example, Claim 29, where you have A statistical analysis request is then followed in the same claim by D statistical analysis request within the same claim, as an example, showing that A means one and only one. This case is much more similar to a case like Harari versus Lee, where you have a single bit line accessing a number of cells. Here you have a single statistical request corresponding to multiple investments. It's based on the context, Your Honor. A couple of other really quick points on the waiver. The exact arguments were made in the course of prosecution, in the inter-parties re-examination, as is normally done in an inter-parties re-examination, which is that you make the argument, you don't have a separate section saying claim construction, but rather you argue what the terms mean in light of the prior art, and that was exactly done. The exact same arguments were made, and I previously pointed out where in the record it shows that. One additional point. The in-sample selection line was introduced, and you can see this on page 265 of the record. It was actually introduced in response to a comment made by appellees in prosecution. What they said was, if you really meant in-sample selection, then put it in the claim. That's what they said on page 266, and we did it. We did it. That's exactly what we did. We asked for it. Is there something about what they said that helps us answer the question whether that meant a step after the scenario definition? Besides just the language by itself, something that says, no, this really means, after you've defined your sample space, and that includes the scenario definition, it means the picking of the thousand, I don't know what the numbers are, but the many, many, many samples on which you then do your resampling. And that's exactly the process. My question was about the record. Is there something that helps us see whether that distinction was being made or not? Yes. Tell us again what pages in the record? Yes. On the record from page 1245 to 1247, in pages 1372 to 1375, we have a discussion of the bias parameter and exactly how that works and how in-samples. I'm talking about the in-sample selection amendment. That's what Judge Toronto was focusing on. Where is the specific reference in the record that will teach us that you are making the amendment in response to an objection? I believe, Your Honor, these citations correspond to the introduction of the amendments made during prosecution in pages 1245 to 1247 and 1372 to 1375, where we made the precise arguments on those changes. Your Honor, just a couple of other very quick comments. Well, wrap it up because you're over your time. Okay, thank you. Your Honor, BRI cannot mean any possible construction. It still has to mean something reasonable. All of this would not have occurred if the Board had done a claim construction. We wouldn't be arguing about bias parameter, et cetera, and meaningful appellate review is not possible because the Board has not bothered to construe the claims. In fact, if you look at page 6 of the opinion, you will see that their construction of bias parameter is contrary. Did you ask them to construe the claim? Your Honor, we clearly told them that this is... I know, but you're now complaining that the Board didn't construe the claim. We're in a case here where your adversary says you didn't even make an argument on claim construction. How can you fault the Board for not having done something in this scenario you're talking about? No, Your Honor. We absolutely told the Board this is what the claim terms mean. Did you ask them to construe the claim? What we did was we argued... I'd say yes or no answer. In the record where you said, Board, please construe the claim. Because I can't find it in what you're saying. What we did was we did not ask for a specific construction per se. What we did was we argued for the meaning of those terms. That's a no. Your Honor, it wasn't per se. You're right. Your time's up, counsel. Thank you.